| | |
|---|---|
| IN RE: | Case No. 19-03846-RNO |
| MELVIN E. SWISHER, JR. | Chapter 7 |
| Debtor | Adv. No. 19-00121-RNO |
| UNITED STATES OF AMERICA, ACTING THROUGH THE FARM SERVICE AGENCY, U.S. DEPARTMENT OF AGRICULTURE | |
| Plaintiff | |
| vs. | |
| MELVIN E. SWISHER, JR. | |
| Defendant | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.     PRELIMINARY STATEMENT**

Plaintiff, United States of America Acting Through the Farm Service Agency, U.S. Department of Agriculture (hereinafter "FSA"), submits this Memorandum of Law in support of its Motion for Summary Judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 and Rule 56 of the Federal Rules of Civil Procedure. This Court has jurisdiction under 28 U.S.C. §§ 157(b)(1) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). As shown below, there are no material issues of fact in dispute and Plaintiff is entitled to judgment as a matter of law.

**II.     PROCEDURAL HISTORY**

Defendant, Melvin E. Swisher, Jr. (hereinafter "Swisher") commenced the within Chapter

7 bankruptcy case on September 10, 2019. Doc. 1. On December 13, 2019 FSA commenced the within adversary proceeding by filing a complaint objecting to discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and 11 U.S.C. § 727(a)(5), and to determine the non-dischargeability of Swisher's obligation to FSA pursuant to 11 U.S.C. § 523(a)(6). Adv. No. 19-00121-RNO, Doc. 1. On January 9, 2020 Swisher filed an answer opposing the relief requested in FSA's complaint. Doc. 4. In his answer, Swisher alleges that FSA was aware that he needed to sell assets to pay the mortgage and that FSA did not object. *Id.*

## III.    STATEMENT OF FACTS

On March 9, 2016, Swisher executed a promissory note to secure a loan in the amount of $275,000.00 from FSA to refinance existing farm operating debts. *See*, Complaint, Paragraph 7, Exhibit A; Answer, Paragraph 7. To secure the payment of the loan, Swisher executed and delivered to FSA two security agreements, dated March 9, 2016 and March 8, 2017. The security agreements granted FSA a security interest in the Debtor's livestock and equipment, among other things, including the proceeds thereof. *See*, Complaint, Paragraph 8, Exhibit B; Answer, Paragraph 8. FSA's security interest was perfected by the filing of a financing statement on March 9, 2016, in the financing records of the Pennsylvania Department of State. *See*, Complaint, Paragraph 9, Exhibit C; Answer, Paragraph 9. Both the promissory note and the security agreements prohibited the sale of the collateral without FSA's written consent. *See*, Complaint, Exhibit A, Paragraph 16; Exhibit B, Paragraph 3(6).

In or around April 2018 Plaintiff's Farm Manager, John Felondis, met with Swisher and also spoke with him on several occasions concerning problems that Swisher was having generating sufficient income from the operation of the dairy farm. During those discussions Felondis advised Swisher to consider converting his operation from dairy farming to beef

farming and also taking another job to supplement the farm income. The recommendation to convert to beef farming would have necessitated replacing dairy cattle with beef cattle, with the beef cattle serving as substitute collateral for the obligation to FSA. *See*, Plaintiff's Affidavit, Paragraph 7.

On or about July 1, 2019 FSA received a letter from Swisher dated June 25, 2019 informing that he had liquidated livestock, including beef cattle that had been purchased from the sale of dairy cattle, and equipment, and that he had used the proceeds from the sale of those assets to pay creditors other than FSA. *See*, Complaint, Paragraphs 11, 15, Exhibit D; Answer, Paragraph 15; Plaintiff's Affidavit, Paragraph 8. FSA maintained a first lien on the livestock sold, replacements purchased and the proceeds thereof, as well as on the equipment sold and the proceeds thereof. *See*, Complaint, Paragraphs 12, 16; Answer, Paragraphs 12, 16; Plaintiff's Affidavit, Paragraph 9. No receipts from the sale of the livestock or equipment were provided to FSA. *See*, Complaint, Paragraphs 13, 17; Answer, Paragraph 13; Plaintiff's Affidavit, Paragraph 10. FSA received no proceeds from the sale of the livestock or equipment. *See*, Complaint, Paragraphs 13, 17; Answer, Paragraph 13; Plaintiff's Affidavit, Paragraph 11.

FSA had never been informed by Swisher of his intent to liquidate equipment and all of the livestock subject to FSA's first lien, nor had FSA consented to such liquidation. *See*, Complaint, Paragraphs 13, 17; Plaintiff's Affidavit, Paragraph 12. FSA had not consented to Swisher using proceeds from the sale of FSA's collateral to pay other creditors. *See*, Plaintiff's Affidavit, Paragraph 13. Following the receipt of the June 25, 2019 letter from Swisher, FSA sent a letter to Swisher dated July 2, 2019, advising that the sale of the assets and use of the proceeds was unauthorized, and requested an accounting of the additional equipment subject to FSA's first lien. *See*, Plaintiff's Affidavit, Paragraph 14, Exhibit "E".

Swisher commenced the within Chapter 7 bankruptcy case on September 10, 2019. *See*, Doc. 1. The Statement of Financial Affairs acknowledges the sale of livestock and equipment between March 2018 and November 2018 to multiple unidentified persons for $58,300.00, which proceeds were paid to BB&T. *See*, Doc. 1, Statement of Financial Affairs, Paragraph 18. The schedule of property lists unspecified machinery, fixtures, equipment and supplies used in business and tools of the trade, with an alleged value of $96,100.00. *See*, Schedule A/B, Paragraph 40. The schedule of secured debts lists the unspecified assets from Paragraph 40 of Schedule B as collateral for FSA's debt. *See*, Doc. 1, Schedule D, Part 2.3.

FSA's visits to the farm reveal that additional collateral has been liquidated, and that the remaining collateral is in poor condition and that the combined value of the remaining assets is far less than alleged in Swisher's bankruptcy schedules. *See*, Plaintiff's Affidavit, Paragraph 15.

As of December 3, 2019, Swisher was indebted to FSA in the total amount of $284,337.06, with interest accruing thereafter in the amount of $19.2100 per day. *See*, Complaint, Paragraph 18, Exhibit E; Answer, Paragraph 18; Plaintiff's Affidavit, Paragraph 16, Exhibit "F".

## IV.    ISSUES

1.    Whether Swisher's sale of FSA's collateral within one year of his bankruptcy filing, over a period of nine months, his use of the proceeds to pay other creditors, and his failure to disclose the sale of those assets until months afterward, and only a short time prior to his bankruptcy filing, requires a denial of discharge pursuant to 11 U.S.C. § 727(a)(2).

Suggested answer: Yes.

2.    Whether Swisher's failure to fully explain the diminution of FSA's collateral

requires a denial of discharge pursuant to 11 U.S.C. § 727(a)(5).

     Suggested answer: Yes.

     3.     Whether Swisher's sale of FSA's collateral and the use of the proceeds to pay other creditors constituted a willful and malicious injury requiring a determination that Swisher's obligation to FSA is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

     Suggested answer: Yes.


## V.     ARGUMENT

### A.     <u>Introduction</u>

     The essential facts underlying this adversary proceeding are undisputed. Swisher had granted FSA a security interest in livestock and farm equipment as collateral for a loan. As the farm began to fail, Swisher sold off the livestock and most of the equipment of value over an 11 month period, and used the proceeds to pay the mortgage and other creditors other than FSA. Not until months later, and shortly before his bankruptcy filing, did Swisher acknowledge to FSA that he had converted FSA's collateral and the proceeds therefrom. Neither his bankruptcy schedules nor his statement of financial affairs fully account for the prepetition sale of FSA's collateral, nor do they provide a detailed description of the remaining collateral.

     In his answer, Swisher contends that FSA was aware of Swisher's financial problems and of his need to liquidate assets to pay the mortgage, and did not object. Notwithstanding Swisher's assertions that FSA was aware of his precarious finances, there is no genuine dispute that FSA was unaware that Swisher intended to liquidate the majority of the farm's assets without replacing them and to apply the proceeds to the mortgage, and that FSA was not complicit in a plan that would have substantially diminshed its secured status. Moreover,

Swisher has failed to produce evidence of FSA's written consent to the conversion of its collateral, a specific requirement contained in both the promissory note and the security agreements. Consequently, Swisher must be denied a general discharge in his Chapter 7 case, and/or Swisher's obligation to FSA must be determined to be non-dischargeable.

### B. <u>Summary Judgment Standard</u>

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedue 56 applicable to bankruptcy adversary proceedings. *In re Barry*, 59 B.R. 654, 657 (Bankr. M.D. PA 2016). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(a)*. Summary judgment may only be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the applicable law to the case. *Id.*

In considering a motion for summary judgment, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548 (1986). The burden is initially on the moving party to demonstrate that the evidence contained in the record does *not* create a genuine issue of material fact. *Conoshenti v. Public Service Electric & Gas Co.,* 364 F.3d 135, 140 (3d Cir, 2004). However, once the moving party has presented evidence which demonstrates an absence of a genuine issue of material fact, the non-moving party may not rest only on the allegations contained in his pleadings. Fed.R.Civ.P. 56(e). Rather, the non-

moving party is required to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corporation v. Catrett,* 477 U.S. at 324. "The party opposing summary judgment may not rest upon the mere allegations or denials of the pleading; its response, by affidavits or as otherwise provided in this title, must set forth specific facts showing that there is a genuine issue for trial." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 171 (3d Cir. 2008), *citing, Saldana v. Kmart Corp.,* 260 F.3d 228, 231-232 (3d Cir.2001).

## C.   Count I-Objection to discharge pursuant to 11 U.S.C. § 727(a)(2)

"Under § 727(a)(2)(A), a Chapter 7 discharge will not be granted if 'the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred ... property of the debtor, within one year before the date of the filing of the petition.' 11 U.S.C. § 727(a)(2)(A)." *In re Barry*, 559 B.R. at 664; *In re Sobol*, 545 B.R. 477, 495–96 (Bankr. M.D. Pa. 2016).

"To meet their burden under § 727(a)(2)(A), the Plaintiffs must establish of evidence (1) debtor transferred, removed or concealed property; (2) property belonged to the debtor; (3) conduct occurred within one year of the petition date; and (4) conduct was intended to hinder, delay or defraud a creditor." *In re Grasso*, 537 B.R. 216, 221–22 (Bankr. E.D. Pa. 2015), *aff'd*, 562 B.R. 877 (E.D. Pa. 2016); *In re Rose*, 397 B.R. 740, 742 (Bankr. M.D. Pa. 2008); *In re Grammenos*, 469 B.R. 535, 546 (Bankr. D.N.J. 2012); *In re Barry*, 559 B.R. at 664. "The elements must be shown by a preponderance of the evidence by the party opposing discharge." *In re Rose*, 397 B.R. at 742; *In re Sobol*, 545 B.R. at 496.

"The intent necessary for a denial of discharge may be found from 'inferences drawn from a course of conduct.'" *In re Rose*, 397 B.R. at 742. "Such inferences can be made by

considering 'badges of fraud.' Those indicia [of fraudulent intent] include: ' (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the party sought to be charged both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; and (7) an attempt by debtor to keep the transfer a secret; ...'" *Id*., at 742–43; *In re Grammenos*, 469 B.R. at 547.

Swisher's Statement of Financial Affairs acknowledges the sale of livestock and equipment over a nine month period between March 2018 and November 2018[1] to multiple unidentified persons for $58,300.00, which proceeds were paid to BB&T. Doc. 1, Statement of Financial Affairs, Paragraph 18. The assets sold, and the proceeds thereof, were collateral for Swisher's secured obligation to FSA. Answer, Paragraphs 12, 16. None of the proceeds from the sale of the livestock or equipment was paid to FSA. Answer, Paragraph 13; Plaintiff's Affidavit, Paragraph 11. No receipts from the sale of the livestock or equipment were provided to FSA. Answer, Paragraph 13; Plaintiff's Affidavit, Paragraph 10.

FSA had become aware of Swisher's difficulties generating sufficient income from his dairy farming operations and had conversations with him in 2018 to recommend converting his operation to beef farming and to supplement his income with an additional job. Plaintiff's

---

[1] Although some of the sales occurred outside of the one-year period prior to the bankruptcy filing, the Third Circuit has adopted the "continuous concealment" doctrine for § 727(a)(2)(A) claims, holding "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period, as long as the debtor allowed the property to remain concealed into the critical year. However, the debtor must have retained some interest in the property during the time of concealment. *In re Grammenos*, 469 B.R. at 547; *In re Weidner*, 476 B.R. 873, 882 fn 11 (Bankr. E.D. Pa. 2012)

Affidavit, Paragraph 7.  FSA had never been informed by Swisher of his intent to liquidate equipment and all of the livestock subject to FSA's first lien, nor had FSA consented to such liquidation.  Plaintiff's Affidavit, Paragraph 12.  FSA learned of the sale of the livestock, including beef cattle that had been purchased from the sale of dairy cattle, and equipment from a letter from Swisher's June 25, 2019 letter, many months after the sales had occurred.  Answer, Paragraph 15.  Swisher commenced the within Chapter 7 bankruptcy case on September 10, 2019.  Doc. 1.

Swisher began his June 25, 2019 letter by indicating that his purpose in writing was to explain his financial hardship.  Complaint, Exhibit E.  He went on to explain that various factors, including low commodity prices, low milk prices and loss of their finish floor contract, had forced him to liquidate assets, and that the proceeds had been applied to the first mortgage and other unspecified bills.  *Id*.  Swisher acknowledged that the conversation with FSA in April 2018 had been for the purpose of staying in business, and he stated that it had been his "intent to replace existing equipment when the economy improved".  *Id*.  The letter reveals that Swisher had sold dairy cows to purchase feeder cattle, but subsequently sold the feeder cattle.  *Id*.  This confirms that FSA had counseled Swisher to convert his operation from dairy farm to beef farming, as opposed to liquidating the farm's assets.

It is apparent from the tone of Swisher's letter that he was, for the first time, detailing the actions taken to liquidate assets, and that his actions were not as originally contemplated by the parties.  The letter confirms that he had spoken with FSA for the purpose of staying in business, and that by selling dairy cattle to purchase beef cattle, he had, at least for a time, followed FSA's advice for turning around the farm operation. Swisher conveys his understanding that the assets sold were FSA's collateral, as well as his contractual obligation to replace the collateral sold.

Swisher's sale of assets subject to FSA's first lien within one year of his bankruptcy filing without replacing FSA's collateral, and his payment of the proceeds to creditors other than FSA, constitutes an injury that satisfies the requirements of Section 727(a)(2)(A). His acknowledgment of FSA's first lien position as to those assets, his failure to disclose the sale of those assets until months afterward, and only a short time prior to his bankruptcy filing, constitutes the necessary intent to deny a discharge pursuant to Section 727(a)(2)(A).

D.      Count I -Objection to discharge pursuant to 11 U.S.C. § 727(a)(5)

"Section 727(a)(5) prohibits discharge when 'the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities.' 11 U.S.C.A. § 727(a)(5)." *In re Park*, 682 F. App'x 88, 92–93 (3d Cir. 2017); *In re Adalian*, 500 B.R. 402, 411 (Bankr. M.D. Pa. 2013); *In re Sobol*, 545 B.R. at 499–500.

"[T]he global purpose of § 727(a)(5) is clear. A debtor must come into court and make full disclosure of his finances. He may not place the burden of 'discovering' assets upon others. Section 727 makes complete financial disclosure a condition precedent to the privilege of discharge." *In re Grammenos*, 469 B.R. at 550; *In re Adalian*, 500 B.R. at 411.

"The party objecting to a debtor's discharge ... has the burden of proving facts establishing that a loss or shrinkage of assets actually occurred. . . Once the plaintiff has shown the loss or deficiency of assets, it falls upon the debtor to provide a satisfactory explanation." *In re Park*, 682 F. App'x at 93; *In re Adalian*, 500 B.R. at 411–12; *In re Grammenos*, 469 B.R. at 550. "There is no requirement the plaintiff show the debtor acted fraudulently or intentionally." *Id*. "What constitutes a 'satisfactory' explanation for § 727(a)(5) purposes is left to the discretion of the court." *In re Park*, 682 F. App'x at 93; *In re Grammenos*, 469 B.R. at 550.

FSA learned of Swisher's sale of the livestock and equipment collateral from Swisher's letter of June 25, 2019. Plaintiff's Affidavit, Paragraph 12. The letter does not identify to whom the various assets were sold. Complaint, Exhibit D. No receipts from the sale of the livestock or equipment were provided to FSA, and FSA had never been informed by Swisher of his intent to liquidate equipment and all of the livestock subject to FSA's first lien, nor had FSA consented to such liquidation. Answer, Paragraph 1; Plaintiff's Affidavit, Paragraph 10, 12. Following the receipt of the June 25, 2019 letter from Swisher, FSA sent a letter to Swisher dated July 2, 2019, advising that the sale of the assets and use of the proceeds was unauthorized, and requested an accounting of the additional equipment subject to FSA's first lien. Plaintiff's Affidavit, Paragraph 14, Exhibit "E".

Swisher's Statement of Financial Affairs acknowledges the sale of livestock and equipment between March 2018 and November 2018 to multiple unidentified persons for $58,300.00, which proceeds were paid to BB&T. Doc. 1, Statement of Financial Affairs, Paragraph 18. Swisher's schedules and statements contain no additional detail with respect to these transactions.

Swisher's Schedule B lists unspecified machinery, fixtures, equipment and supplies used in business and tools of the trade, with an alleged value of $96,100.00. Schedule A/B, Paragraph 40. The schedule of secured debts lists the unspecified assets from Paragraph 40 of Schedule B as collateral for FSA's debt. Doc. 1, Schedule D, Part 2.3.[2]

FSA's visits to the farm reveal that additional collateral has been liquidated, and that the remaining collateral is in poor condition, with the combined value of the remaining assets being far less than alleged in Swisher's bankruptcy schedules. Plaintiff's Affidavit, Paragraph 15.

---

[2] Schedule B and Schedule D reference an attached Exhibit "A", but an exhibit listing these assets was neither attached to the schedules nor does it appear elsewhere on the docket.

Swisher's bankruptcy filing provided minimal information concerning what assets were sold for $58,300, when the assets were sold, or to whom those assets were sold. Although Swisher's letter of June 25, 2019 provided more detailed information concerning the sale, the letter also failed to disclose who purchased the assets. Neither his statement of affairs nor the letter provided information to allow for a determination as to whether the buyers were insiders or whether adequate consideration was received for the assets sold. Swisher's filed schedules alleged that he was in possession of collateral for FSA's debt having a combined value of $96,100.00. However, the schedules did not itemize that collateral, and FSA's subsequent inspection of equipment remaining on the farm reveals equipment and facilities in poor condition with an estimated value far less than $96,100.00. Swisher's inadequate disclosure with respect to FSA's collateral, both that sold prepetition and that remaining on the date of the bankruptcy failing, supports the denial of a discharge pursuant to Section 727(a)(5).

E.    **Count II-Determination of dischargeability pursuant to 11 U.S.C. § 523(a)(6)**

"Under § 523(a)(6), a discharge will not apply to a debt 'for willful and malicious injury by the debtor to another entity or to the property of another entity.' 11 U.S.C. § 523(a)(6)." *In re Barry*, 559 B.R. at 663; *In re Gay*, 537 B.R. 208, 214 (Bankr. M.D. Pa. 2015); *In re Mauz*, 532 B.R. 589, 596 (Bankr. M.D. Pa. 2015).

"An action is 'willful' if it is intended to injure another party or has a substantial certainty of producing injury." *In re Webb,* 525 B.R. 226, 232 (Bankr.M.D.Pa.2015). "The plaintiff must establish that the debtor 'purposefully inflict[ed] the injury or act[ed] in such a manner that he is substantially certain that injury will result.'" *In re Mauz*, 532 B.R. at 596; *In re Gay*, 537 B.R. at 215; *In re Webb*, 525 B.R. 226, 232–33 (Bankr. M.D. Pa. 2015).

"The term 'malice' and its derivative 'malicious' also has a unique meaning under § 523(a)(6). Malice is defined as 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill–will.' *Jou v. Adalian (In re Adalian),* 474 B.R. 150, 163 (Bankr.M.D.Pa.2012); *AgChoice Farm Credit, ACA v. Glenn (In re Glenn),* 470 B.R. 731, 736 (Bankr.M.D.Pa.2012). For malice to be found, a debtor must have had 'actual knowledge' that harm to the creditor was at least substantially certain to occur." *In re Gay*, 537 B.R. at 215; *In re Mauz*, 532 B.R. at 596; *In re Webb*, 525 B.R. at 233.

"The burden of proof is on the creditor to show that the debt arose from a willful and malicious injury by a preponderance of the evidence." *In re Barry*, 559 B.R. at 663; *In re Gay*, 537 B.R. at 212. "To determine whether or not a debtor's actions are willful and malicious, a court must examine the debtor's state of mind at the time he acted to produce the injury." *In re Mauz*, 532 B.R. at 596. "Circumstantial evidence may be used to assist in the analysis of what the debtor was actually thinking or actually knew at the time he acted." *Id*; *In re Barry*, 559 B.R. at 663; *In re Webb*, 525 B.R. at 233.

A debtor's sale of a secured creditor's collateral and use of the proceeds to pay another creditor without legal justification constitutes conversion of the creditor's security interest that is wrongful and therefore malicious within the meaning of 11 U.S.C. § 523(a)(6). *See*, *In re Rezykowski*, 493 B.R. 713, 725 (Bankr. E.D. Pa. 2013); *In re Hannan*, 477 B.R. 603, 612–13 (Bankr. W.D. Pa. 2012).

Swisher has acknowledged liquidating livestock and equipment subject to FSA's first lien. Answer, Paragraphs 12, 16. He has acknowledged an understanding that he has a contractual duty to replace collateral that is sold. Affidavit, Exhibit "D". He has admitted that none of the proceeds of the sale of the assets was paid to FSA. Answer, Paragraph 13.

Swisher's sale of these assets without replacing the assets or paying any of the proceeds to FSA has significantly diminished the value of FSA's collateral. Plaintiff's Affidavit, Paragraph 15.

The absence of any legal justification for the sale of FSA's collateral and the conversion of the proceeds cannot be excused by Swisher's contention that FSA knew of his intentions and failed to object. In his letter of June 25, 2019, Swisher acknowledged that he may not have understood FSA's position, stating "[h]opefully we didn't misunderstand you.(sic) about do what we have to do to stay in business". Affidavit, Exhibit "D". Moreover, any misunderstanding on the part of Swisher with regard to FSA's position cannot overcome the requirement in the promissory note and the security agreements prohibiting the sale of the collateral without FSA's written consent. *See*, Complaint, Exhibit A, Paragraph 16; Exhibit B, Paragraph 3(6).

Accordingly, Swisher's conversion of FSA's collateral was willful and malicious, and therefore should be deemed not dischargeable in his Chapter 7 case pursuant to 11 U.S.C. § 523(a)(6).

## VI.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests that this Honorable Court grant its Motion for Summary Judgment.

Respectfully submitted,

KML Law Group, P.C.

By: *<u>/s/ James C. Warmbrodt, Esquire</u>*
James C. Warmbrodt, Esquire
Pennsylvania Attorney I.D. No. 42524
Suite 5000 – BNY Independence Center
701 Market Street

Philadelphia, PA  19106-1532
412-430-3594 (Direct)
FAX (215) 825-64423
jwarmbrodt@kmllawgroup.com

