**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | Case No. 19-03846-RNO |
| MELVIN E. SWISHER, JR. | Chapter 7 |
| Debtor | Adv. No. 19-00121-RNO |
| UNITED STATES OF AMERICA, ACTING THROUGH THE FARM SERVICE AGENCY, U.S. DEPARTMENT OF AGRICULTURE | |
| Plaintiff | |
| vs. | |
| MELVIN E. SWISHER, JR. | |
| Defendant | |

## PLAINTIFF'S CONCISE STATEMENT OF MATERIAL FACTS

The United States of America, acting through the Farm Service Agency, U.S. Department of Agriculture (hereinafter "FSA"), by its undersigned counsel, James C. Warmbrodt, Esquire, and KML Law Group, P.C., hereby submits this Statement of Material Facts in support of its Motion for Summary Judgment as follows:

1. On March 9, 2016, Defendant, Melvin E. Swisher, Jr. (hereinafter "Swisher"), executed a promissory note to secure a loan in the amount of $275,000.00 from FSA to refinance existing farm operating debts. *See*, Complaint, Paragraph 7, Exhibit A; Answer, Paragraph 7.

2. The promissory note provides, in relevant part, that "[p]roperty constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the ***written***

consent of the Government". *See*, Complaint, Exhibit A, Paragraph 16 (emphasis added).

3. To secure the payment of the loan, Swisher executed and delivered to FSA two security agreements dated March 9, 2016 and March 8, 2017. The security agreements granted FSA a security interest in the Debtor's livestock and equipment, among other things, including the proceeds thereof. *See*, Complaint, Paragraph 8, Exhibit B; Answer, Paragraph 8.

4. The Security Agreements provide in relevant part as follows: 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT: …Debtor will…(6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior ***written*** consent of Secured Party; … *See*, Complaint, Exhibit B (emphasis added).

5. FSA's security interest was perfected by the filing of a financing statement on March 9, 2016, in the financing records of the Pennsylvania Department of State. *See*, Complaint, Paragraph 9, Exhibit C; Answer, Paragraph 9.

6. Pursuant to the security agreement dated March 8, 2017, Swisher granted FSA a security interest in 46 dairy cows, 2 bred heifers and 1 calf, together with all increases, replacements, substitutions and additions thereto, as well as a security interest in various pieces of equipment, all of which are specifically identified therein. *See*, Complaint, Paragraphs 10, 14, Exhibit B; Answer, Paragraphs 10, 14.

7. In or around April 2018 Plaintiff's Farm Manager, John Felondis, met with Swisher and also spoke with him on several occasions concerning problems that Swisher was having generating sufficient income from the operation of the dairy farm. During those discussions Felondis advised Swisher to consider converting his operation from dairy farming to beef farming and also taking another job to supplement the farm income. The recommendation to

convert to beef farming would have necessitated replacing dairy cattle with beef cattle, with the beef cattle serving as substitute collateral for the obligation to FSA. *See*, Plaintiff's Affidavit, Paragraph 7.

8.  On or about July 1, 2019 FSA received a letter from Swisher dated June 25, 2019 informing that he had liquidated livestock, including beef cattle that had been purchased from the sale of dairy cattle, and equipment, and that he had used the proceeds from the sale of those assets to pay creditors other than FSA. *See*, Complaint, Paragraphs 11, 15, Exhibit D; Answer, Paragraph 15; Plaintiff's Affidavit, Paragraph 8.

9.  FSA maintained a first lien on the livestock sold, replacements purchased and the proceeds thereof, as well as on the equipment sold and the proceeds thereof. *See*, Complaint, Paragraphs 12, 16; Answer, Paragraphs 12, 16; Plaintiff's Affidavit, Paragraph 9.

10.  No receipts from the sale of the livestock or equipment were provided to FSA. *See*, Complaint, Paragraphs 13, 17; Answer, Paragraph 13; Plaintiff's Affidavit, Paragraph 10.

11.  FSA received no proceeds from the sale of the livestock or equipment. *See*, Complaint, Paragraphs 13, 17; Answer, Paragraph 13; Plaintiff's Affidavit, Paragraph 11.

12.  FSA had never been informed by Swisher of his intent to liquidate equipment and all of the livestock subject to FSA's first lien, nor had FSA consented to such liquidation. *See*, Complaint, Paragraphs 13, 17; Plaintiff's Affidavit, Paragraph 12.

13.  FSA had not consented to Swisher using proceeds from the sale of FSA's collateral to pay other creditors. *See*, Plaintiff's Affidavit, Paragraph 13.

14.  Swisher has admitted that FSA did not give written consent to the sale of its collateral or use of the proceeds to pay other creditors. *See*, Answers to Interrogatories Nos. 1-4.

15.  Following the receipt of the June 25, 2019 letter from Swisher, FSA sent a letter to

Swisher dated July 2, 2019, advising that the sale of the assets and use of the proceeds was unauthorized, and requested an accounting of the additional equipment subject to FSA's first lien. *See*, Plaintiff's Affidavit, Paragraph 14, Exhibit "E".

16. Swisher commenced the within Chapter 7 bankruptcy case on September 10, 2019. *See*, Doc. 1.

17. The Statement of Financial Affairs acknowledges the sale of livestock and equipment between March 2018 and November 2018 to multiple unidentified persons for $58,300.00, which proceeds were paid to BB&T. *See*, Doc. 1, Statement of Financial Affairs, Paragraph 18.

18 The schedule of property lists unspecified machinery, fixtures, equipment and supplies used in business and tools of the trade, with an alleged value of $96,100.00. *See*, Schedule A/B, Paragraph 40.

19. The schedule of secured debts lists the unspecified assets from Paragraph 40 of Schedule B as collateral for FSA's debt. *See*, Doc. 1, Schedule D, Part 2.3.

20. FSA's visits to the farm reveal that additional collateral has been liquidated, and that the remaining collateral is in poor condition and that the combined value of the remaining assets is far less than alleged in Swisher's bankruptcy schedules. *See*, Plaintiff's Affidavit, Paragraph 15.

21. As of December 3, 2019, Swisher is indebted to FSA in the total amount of $284,337.06, with interest accruing thereafter in the amount of $19.2100 per day. *See*, Complaint, Paragraph 18, Exhibit E; Answer, Paragraph 18; Plaintiff's Affidavit, Paragraph 16, Exhibit "F".

Respectfully submitted,

KML Law Group, P.C.

By: _/s/ James C. Warmbrodt, Esquire_
James C. Warmbrodt, Esquire
Pennsylvania Attorney I.D. No. 42524
Suite 5000 – BNY Independence Center
701 Market Street
Philadelphia, PA  19106-1532
412-430-3594 (Direct)
FAX (215) 825-64423
jwarmbrodt@kmllawgroup.com